**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Percy Edward Moore,** : | |
| : | |
| **Plaintiff,** : | |
| v. : | Civil Action No. 11-1067 (CKK) |
| : | |
| **Federal Bureau of** : | |
| **Investigation** *et al.*, : | |
| : | |
| **Defendants.** : | |

**MEMORANDUM OPINION**

In this action brought *pro se* under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff sues multiple components of the Department of Justice ("DOJ"), as well as the Central Intelligence Agency ("CIA"), and the Executive Office of the President ("EOP") for the production of his records. Pending is the motion of the Federal Bureau of Investigation ("FBI"), the Bureau of Prisons ("BOP"), the U.S. Parole Commission ("USPC"), the CIA, and the EOP to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or for summary judgment under Rule 56. Defs.' Partial Mot. to Dismiss, or in the Alternative, for Summ. J. [Dkt. # 30]. Also pending is the separate motion of the Executive Office for U.S. Attorneys ("EOUSA") and DOJ's Criminal Division to dismiss or for summary judgment. Defs.' Supp. Mot. to Dismiss, or in the Alternative, for Summ. J. ("Defs.' Supp. Mot.") [Dkt. # 33]. Upon consideration of the parties' submissions and the entire record, the Court will grant both motions for summary judgment and enter judgment for the defendants.[1]

---

[1]    Plaintiff's opposition is captioned "Plaintiff's Motion in Opposition to Summary Judgment" [Dkt. # 39-1] and includes the following unpaged documents: "Statement of Material

## BACKGROUND

Plaintiff Percy Edward Moore filed this action on October 4, 2010, in the Western District of Wisconsin, which transferred the case to this Court on June 8, 2011. Plaintiff seeks the production of "[a]ll files that contain the name Percy Edward Moore, all investigative, medical, [and] criminal files . . . all reports, documents, recordings, [and] videos." Compl. [Dkt. # 1] ¶ 2. Attached to the complaint are plaintiff's separate FOIA requests that he allegedly sent from the Federal Medical Center ("FMC") in Rochester, Minnesota, where he is incarcerated, to the FBI's Chicago Field Office (in March 2010), the BOP (in April 2010), the CIA (in April 2010), the EOP (in April 2010), the Criminal Division (in July 2010), EOUSA (in August 2010), and the USPC (in September 2010). In addition, plaintiff requested by letter to the CIA dated May 18, 2010, "information to make easier to locate consciousness-altering technology, or behavioral modification techniques, information regarding the program, and used by Nixon and J. Edgar Hoover[,] any up to date research on the technology records of legal cases made public of it' [sic] use in society." Compl. Attach. [Dkt. # 1-1], ECF 3. The defendants' respective responses are as follows:

- After the filing of this action, the FBI searched its FOIPA Document Processing System for plaintiff's March 2010 request to the Chicago Field Office. Decl. of Dennis Argall [Dkt. # 30-4] ¶ 4. The FBI located several of plaintiff's requests "dating back to 2006, as well as two requests [] dated March 6, 2010, which plaintiff mailed to FBIHQ and the Chicago

---

Facts as to Which There is No Genuine Issue," "Plaintiff's Memorandum in Opposition to Summary Judgment," and "Declaration of Percy Edward Moore." When referring to those documents, the Court will cite the page numbers assigned by the electronic docketing system.

Field Office . . . ." *Id.* ¶ 5. The search revealed that by letters of March 26, 2010, and April 5, 2010, the FBI informed plaintiff that it had conducted a search and "determined that there are no additional records responsive to your request" that were not released "in relation to past requests." *Id.*, Exs. A & B; *see also* Decl. of David M. Hardy [Dkt. # 41-1] ¶ 13 (confirming same).

- In response to the instant complaint, BOP conducted a search to determine if it had received the underlying FOIA request. It initially located only a referral from the U.S. Marshals Service in response to a FOIA request plaintiff had filed there in 2010, which was not the request attached to the instant complaint. Second Decl. of Carmen Rinella ("2d Rinella Decl.") [Dkt. # 30-5] ¶¶ 14-16. BOP processed the underlying FOIA request on January 4, 2011, when it "became aware of the litigation and request." *Id.* ¶ 18. By letter dated February 22, 2011, BOP informed plaintiff that his request for a fee waiver was denied, and it assessed him an estimated fee of $100 for the approximately 1,100 pages of responsive records that were located following a search at FMC Rochester. *Id.* ¶¶ 19-20 & Ex. F. The letter informed plaintiff that in order to proceed with his request, BOP would need him to confirm his willingness to pay the assessed fee, modify the request to reduce the fee, or request "the first one hundred pages free and/or two hours of search time whichever comes first." Ex. F at 1-2. Plaintiff was further told that BOP "will suspend processing of this request until we receive your response." *Id.* at 2. Since plaintiff had not

3

responded to the letter by September 8, 2011, BOP closed his request file. 2d Rinella Decl. ¶¶ 21-23.

- The USPC conducted a search and informed plaintiff by letter of September 16, 2010, that it had located no responsive records "because he had yet to have an initial parole hearing." Decl. of Anissa H. Banks [Dkt. # 30-7] ¶ 8 & Ex. 2. The letter explained that "[t]he Commission reviews material copied from [BOP] files . . . in preparation for [a] parole hearing" and returns the material to BOP when that review is completed. It is only after a hearing that material forwarded from BOP "is indexed by the inmate's name, incorporated in the Commission's system of records and becomes a parole file." Ex. 2; *see also* Banks Decl. ¶ 4.

- The CIA conducted a search and informed plaintiff by letter of May 25, 2010, that it had located no responsive records, and "with respect to responsive records that would reveal a classified connection to the CIA, in accordance with section 3.6(a) of Executive Order 12958, as amended," it could neither confirm nor deny their existence. The CIA invoked FOIA exemptions 1 and 3 and Privacy Act exemptions (j)(1) and (k)(1) as the bases for the latter response.[2] Decl. of Susan Viscuso [Dkt. # 30-6] ¶¶ 11-12 & Ex. F. Plaintiff filed an administrative appeal by letter of June 2,

---

[2]   The FOIA's exemptions are codified at 5 U.S.C. § 552(b). The Privacy Act exemptions, *see* 5 U.S.C. § 552a, are not at issue, but they would not in any event bar disclosure of documents that are required to be disclosed under the FOIA. 5 U.S.C. § 552a(b)(2); *see Greentree v. United States Customs Serv.*, 674 F.2d 74, 79 (D.C. Cir. 1982).

2010, which the agency closed upon plaintiff's filing of this action. Viscuso Decl. ¶¶ 13-17.

- The Criminal Division conducted a search and informed plaintiff by letter of September 30, 2010, that it had located no responsive records. Suppl. Mot., Decl. of E. Thomas Roberts [Dkt. # 33-1] ¶ 12 & Ex. 6. It further informed plaintiff that it was referring his request to the Organized Crime Drug Enforcement Task Force for processing and a direct response to plaintiff because it had become "an independent entity reporting directly to the Deputy Attorney General." Ex. 6. Plaintiff unsuccessfully appealed the Criminal Division's determination to DOJ's Office of Information and Privacy ("OIP"). *See* Exs. 7, 8.

- By letter of August 3, 2011, EOUSA informed plaintiff that it had located one box of "documents in your criminal case" in the United States Attorney's Office in the Northern District of Illinois and that a box typically contains between 2000 and 4000 pages of records. Decl. of David Luczynski [Dkt. # 33-3], Ex. E. Plaintiff was further informed that "it is clear that charges will exceed $25" and that "[i]f you wish to reduce the amount of fees, you may reformulate your request." *Id*. Either way, plaintiff was told that he had 30 days to respond to the letter or his request would be closed. The letter included a form for plaintiff to choose his options and to return it to EOUSA. *Id*. As of October 19, 2011, EOUSA had received no response from plaintiff. Luczynski Decl. ¶ 8.

## LEGAL STANDARD

Summary judgment is appropriate upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The FOIA requires a federal agency to release all records responsive to a properly submitted request except those protected from disclosure by one or more of nine enumerated exemptions. *See* 5 U.S.C. § 552(b). The agency's disclosure obligations are triggered by its receipt of a request that "reasonably describes [the requested] records" and "is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). The FOIA authorizes the court only "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Thus, the elements of a FOIA claim are (1) improperly  (2) withheld (3) agency records. "Judicial authority to devise remedies and enjoin agencies can only be invoked under the jurisdictional grant conferred by [5 U.S.C.] § 552 [(a)(4)(B)], if the agency has contravened all three components of this obligation." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).   The disclosure requirement generally covers only those records that are in the agency's custody and control at the time of the FOIA request. *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983).

In a FOIA case, the Court may award summary judgment to an agency solely on the information provided in affidavits or declarations when they describe "the justifications for

6

nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *accord Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The district court must conduct a "de novo" review of the record, 5 U.S.C. § 552(a)(4)(B), which "requires the court to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure." *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citation and internal quotation marks omitted). "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that "it has fully discharged its disclosure obligations" is summary judgment appropriate. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

Agency declarations are accorded "a presumption of good faith[.]" *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 54 (D.D.C. 2006) (citation and quotation omitted). To rebut the presumption, a plaintiff "must point to evidence sufficient to put the Agency's good faith into doubt." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). In properly opposing a summary judgment motion, plaintiff may not merely "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; *see Schoenman v. FBI*, 841 F. Supp. 2d 69, 80 (D.D.C. 2012) ("In other words, 'uncontradicted, plausible affidavits showing

reasonable specificity and a logical relation to the exemption are likely to prevail.'") (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011)). (alteration omitted).

## DISCUSSION

Defendants argue correctly that the EOP is not an agency subject to the FOIA's disclosure requirements. *Voinche v. Obama*, 428 Fed. Appx. 2 (D.C. Cir. 2011) (per curiam). Therefore, the Court will grant defendants' motion to dismiss the complaint against EOP under Rule 12(b)(6). In addition, plaintiff "does not object to granting" defendants' motion for summary judgment with respect to his requests made to the Criminal Division and the USPC. Decl. of Percy Edward Moore ("Moore Decl.") [Dkt. # 39-1, 17-26] ¶¶ 17, 25. Therefore, the Court will grant defendants' summary judgment motion with respect to those requests. What remains, then, are plaintiff's challenges to the FBI's, BOP's, CIA's, and EOUSA's responses to his requests for records.

<u>FBI Records</u>

Plaintiff claims that the FBI's search "was unreasonable [because] [it] did not count the [] documents" withheld by its Chicago Field Office. Pl.'s Mot. in Opp'n to Summ. J. ("Pl.'s Opp'n"), Statement of Material Facts As to Which There is No Genuine Issue ("Pl.'s Facts") [Dkt. # 39-1, 3-6] ¶¶ 1, 5. The Court is unsure how that statement raises a genuine question about the FBI's search since it implies that the FBI located responsive records. Nevertheless, the Court finds for the reasons that follow that the FBI's search was adequate.

When an agency's search for records is challenged, "the agency must show beyond material doubt [] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. For purposes of this showing, the agency "may rely

8

upon affidavits . . . , as long as they are relatively detailed and nonconclusory and . . . submitted in good faith." *Id*. (citations and quotation marks omitted). The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched. . . ." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *accord Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). "Once the agency has shown that its search was reasonable, the burden shifts to [plaintiff] to rebut [defendant's] evidence by a showing that the search was not conducted in good faith." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search. *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology v. Nat'l Sec'y Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

In determining the adequacy of a FOIA search, the court is guided by principles of reasonableness, *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27-28 (D.C. Cir. 1998), mindful that an agency is required to produce only those records in its custody and control at the time of the FOIA request. *McGehee*, 697 F.2d at 1110. Because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007) (citations omitted).

In December 2011, the FBI discovered that it had already informed plaintiff in March and April of 2010 that it had located no records that were not previously released to him in response

9

to his earlier FOIA requests. Argall Decl. ¶ 5; Hardy Decl. ¶ 13. Plaintiff does not dispute that such was the case. In any event, Hardy states that the FBI "conducted a search of the indices to the [Central Records System] to identify all potentially responsive files indexed to Percy Edward Moore." Hardy Decl. ¶ 13. The search consisted of "a three-way phonetic breakdown of [plaintiff's name]. Through this search, [the FBI] did not locate any additional main files or cross-references in addition to the material [it] had already processed and released to plaintiff in response to his prior requests." Id. Hardy has provided a thorough description of the filing systems that were searched and the search methods employed. Id. ¶¶ 7-12. Plaintiff has not proffered any evidence to call into question the reasonableness of the FBI's search. The Court therefore finds that defendants, having shown that the FBI conducted a search reasonably calculated to locate all responsive records, is entitled to judgment on the only disputed question about the FBI's processing of plaintiff's request.

BOP Records

Plaintiff challenges defendants' argument that he failed to exhaust his administrative remedies with BOP. He asserts that he "did not appeal the [fee waiver] denial [and] accepted the fees the agency determined, and waited for BOP to notify him of the exact fee." Pl.'s Facts ¶ 11. But BOP's letter directed plaintiff to notify it within 30 days as to whether he would pay the fee, modify his request to reduce the fee, or request the first 100 pages free of charge, and clearly advised him that "[w]e will suspend processing of this request until we receive your response." 2d Rinella Decl., Ex. F at 1-2. Plaintiff attaches to his declaration a document dated March 2, 2011, stating his willingness to pay the assessed fees, Moore Decl., Ex. J, which contradicts plaintiff's stated fact that he "waited for BOP to notify him of the exact fee." Pl.'s Facts ¶ 11. Since plaintiff has sworn under penalty of perjury that the statements in his declaration are true,

the Court will accept that he "forward[ed] a letter to Richard W. Schott [on March 2, 2011] agreeing to pay all fees associated with his request." Moore Decl. ¶ 10. Plaintiff provides no proof that he mailed the letter and that BOP received the letter and, therefore, has failed to refute with any evidence BOP's declaration that it had not received a response from him as of September 8, 2011. 2d Rinella Decl. ¶ 21.

In any event, since BOP has not yet processed plaintiff's request and, thus, has not improperly withheld responsive records, the Court has no role to play. It therefore finds that defendants are entitled to judgment on the claim against BOP based on plaintiff's failure to exhaust his administrative remedies. *See Oglesby,* 920 F.2d at 66 ("Exhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees."); *accord Judicial Watch, Inc. v. FBI*, 190 F. Supp. 2d 29, 33 (D.D.C. 2002). Now that plaintiff has indicated his willingness to pay the assessed fees, the Court will assume that BOP will process plaintiff's request in a timely manner without court supervision.

<u>CIA Records</u>

As an initial matter, the Court finds as a matter of law that plaintiff's second request to the CIA dated May 18, 2010, for "information to make easier to locate consciousness-altering technology, or behavioral modification techniques, information regarding the program . . . ." is not reasonably descriptive to trigger the CIA's disclosure obligations. "Under [the] FOIA, an individual may obtain access to records 'written or transcribed to perpetuate knowledge or events' . . . . [The] FOIA neither requires an agency to answer questions disguised as a FOIA request . . . [n]or to create documents or opinions in response to an individual's request for information." *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C.1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987), *cert. denied*, 484 U.S. 803 (1987) (citations omitted); *see Maydak v. U.S. Dep't of Justice*, 254 F.

11

Supp. 2d 23, 46 (D.D.C. 2003) ("Plaintiff's request was no more than a series of questions or requests for information that went beyond the scope of the FOIA."). Furthermore, "an agency is not required to have 'clairvoyant capabilities' to discover the requester's need." *Hudgins*, 620 F. Supp. at 21 (citation omitted); *see also Amer. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 738 F. Supp. 2d 93, 103 n.1 (D.D.C. 2010) ("it [is] the plaintiff's obligations to describe the records sought with reasonable detail") (citations omitted).

With respect to the request submitted in April 2010, plaintiff challenges the adequacy of the CIA's search for records pertaining to him and its decision to neither confirm nor deny the existence of records "that would reveal a classified connection to the CIA." *See* Pl.'s Mem. in Opp'n to Summ. J. [Dkt. 39-1, 7-15] at 13-15. The Court finds from Viscuso's thorough description of the CIA's filing systems and the search methods employed, Viscuso Decl. ¶¶ 18-24, which plaintiff has not seriously contested, that the CIA conducted an adequate search for records responsive to plaintiff's request for his records.

An agency's decision to neither confirm nor deny records is commonly known as a *Glomar* response in reference to the subject of a FOIA request for records pertaining to a ship, the "Hughes Glomar Explorer." *See Phillippi v. Central Intelligence Agency*, 546 F.2d 1009 (D.C. Cir. 1976). "[A]n agency may issue a *Glomar* response . . . if the particular FOIA exemption at issue would itself preclude the acknowledgement of such documents." *Electronic Privacy Info. Center v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012) (citing *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). The CIA's *Glomar* response is based on FOIA exemptions 1 and 3. *See* Viscuso Decl. ¶ 12 & Ex. F.

Exemption 1 applies to materials that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign

policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  Although the Court's review of a FOIA record is "de novo," § 552(a)(4)(B), "courts are generally ill-equipped to second-guess an agency's opinion in the national security context[;] [thus,] 'the government's burden [with regard to such matters] is a light one.'"  *Schoenman*, 841 F. Supp. 2d at 81-82 (quoting *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 624 (D.C. Cir. 2011)).  Agency declarations in this context are accorded "substantial weight and deference."  *Id*. at 82.

Viscuso explains that "[t]he *Glomar* response is codified in Executive Order 13526 which states 'an agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact [of same] is itself classified under this order or its predecessors."  Viscuso Decl. ¶ 25; *see also* Exec. Order No. 13,526, § 3.6(a), 75 Fed.Reg. 707 (Dec. 29, 2009).  Information "about a particular person generally would be classified in the context of CIA-37, Directorate of Operations Records," which encompasses "individuals 'who are of foreign intelligence or foreign counterintelligence interest to the CIA, either because of their actual, apparent, or potential association with foreign intelligence or counterintelligence activities . . . ."  Viscuso Decl. ¶ 27.  On the other hand, when "the 'fact of' the existence of CIA records . . . is not classified, the Agency cannot provide a *Glomar* response for the entire FOIA/PA request."  *Id*. ¶ 29.  "For example, in the context of CIA-25, Office of the Director Action Center Records, . . . information about a particular person may be unclassified [because] individuals covered by CIA-25 include . . . anyone who may have sent a letter to the Director, and . . . correspondence with members of the general public."  *Id*. ¶ 28.  Such information "would not necessarily reveal whether CIA had an intelligence interest in that person or otherwise risk harm to national security."  *Id*.

Viscuso provides a reasonable explanation as to why the agency "consistently provide[s] a *Glomar* response even when there are no classified records responsive to a particular request." *Id*. ¶ 30. If a *Glomar* response is provided only when classified records are found, the response would in fact be useless because it "would unsurprisingly be interpreted as an admission that classified responsive records exist, thereby revealing a classified fact." *Id*.

In this case, "the CIA searched [adequately] for records that contained an open and acknowledged association with the agency, and found no records." *Id*. ¶ 29. As to any potentially classified records pertaining to intelligence sources or activities, the CIA properly provided a *Glomar* response in accordance with § 3.6(a) of Executive Order 13,526. Viscuso Decl. ¶ 25. *See Schoenman*, 841 F. Supp. 2d at 80-83 (discussing Executive Order 13,526); *accord Int'l Counsel Bureau v. USCIA*, 774 F. Supp. 2d 262, 267-273 (D.D.C. 2011); *ACLU v. Dep't of Justice*, 808 F. Supp. 2d 280, 298-301 (D.D.C. 2011), *appeal docketed*, No. 11–5320 (D.C. Cir. Nov. 16, 2011).

Exemption 3 applies to materials that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). "In other words, Exemption 3 incorporates the protections afforded by other statutes shielding records from public disclosure." *Schoenman*, 841 F. Supp. 2d at 83. The CIA properly relied upon the Central Intelligence Agency Act of 1949 ("CIA Act"), 50 USC § 403(g), also to support its *Glomar* response. *See id*. at 84 ("It is well-established that both [the National Security Act of 1947 and the CIA Act] relied upon by the CIA in this case fall within the ambit of Exemption 3.") (citing cases).

Plaintiff has not adequately countered the CIA's reasonably detailed declaration with any contradictory evidence or evidence of agency bad faith. Rather, he seems to assert that the requested records are needed in the public's interest to shed light on the agency's alleged "illegal

14

activity" that he has neither specified nor substantiated.  *See* Pl.'s Mem. at 14-15.  But it is in only exemptions 6 and  7(C) – not asserted here -- that "the court is called upon to balance the conflicting [public/private] interests and values involved; in other exemptions Congress has struck the balance and the duty of the court is limited to finding whether the material is within the defined category."  *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 486 n.80 (D.C. Cir. 1980)) (citation omitted).  The Court finds that the CIA properly relied on exemptions 1 and 3 to support its *Glomar* response.  Defendants therefore are entitled to judgment on the claim against the CIA.

<u>EOUSA Records</u>

Plaintiff does not dispute defendants' evidence that he failed to respond within 30 days to EOUSA's letter of August 3, 2011, directing him to indicate his willingness to pay any assessed fees for the box of responsive records it had located or inviting him to modify his request to reduce any assessed fees.  In fact, plaintiff admits that he "waited for the agency to notify him of the assessed fee," Moore Decl. ¶ 16, even though the letter told him that his failure to provide a response within 30 days would result in the closing of his request.  As the Court found with regard to the BOP records, defendants are entitled to judgment on the claim against EOUSA based on plaintiff's failure to exhaust his administrative remedies and because no improper withholding has occurred since plaintiff's request has yet to be processed.

## CONCLUSION

For the foregoing reasons, the Court finds that no material fact with regard to defendants' satisfaction of their disclosure obligations under the FOIA is in genuine dispute and that

defendants are entitled to judgment as a matter of law.  Hence, the Court will grant defendants' motions for summary judgment.  A separate Order accompanies this Memorandum Opinion.

                                                             _____s/s_____
                                                             COLLEEN KOLLAR-KOTELLY
DATE:  August 13, 2012                      United States District Judge